IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**VICTORIA L. ALDRIDGE,**

       **Plaintiff,**

**v.**                                           **Case 2:20-cv-02122-MSN-cgc**

**TENNESSEE DEPARTMENT OF CHILD SERVICE,**

**JANE CANE,** *Supervisor of DCS, in her official capacity*,

**TYLITA FRIERSON,** *Investigator for DCS, in her individual and official capacity*,

**SHAQUITA HOLT,** *Family Social Worker for DCS, in her individual and official capacity*, **and**

**CYNTHIA ROGERS,** *Supervisor of DCS, in her official capacity*,

       **Defendants.**

---

**REPORT AND RECOMMENDATION ON *IN FORMA PAUPERIS* SCREENING
PURSUANT TO 28 U.S.C. § 1915**

---

On February 18, 2020 Plaintiff Victoria L. Aldridge filed a *pro se* Complaint alleging violations of her civil rights under 42 U.S.C. § 1983 ("Section 1983"), as well as for "Tennessee state law claims . . . for abuse of process, negligence, malicious prosecution, perjury, conspiracy, official misconduct and intentional infliction of emotional distress." (Docket Entry ("D.E.") # 1.) Plaintiff also filed a motion to proceed *in forma pauperis*, (D.E. # 2), which this Court granted on March 3, 2020, (D.E. # 7). This case has been referred to the United States Magistrate Judge for

management and for all pretrial matters for determination and/or report and recommendation as appropriate pursuant to Administrative Order 2013-05.[1] For the reasons set forth herein, it is RECOMMENDED that Plaintiff's Complaint be DISMISSED pursuant to 28 U.S.C. § 1915 ("Section 1915") for failure to state a claim upon which relief may be granted.

## I.  Introduction

Plaintiff's Complaint arises out of a series of events with the Tennessee Department of Child Services ("DCS") and several of its employees (collectively, the "Defendants"). Plaintiff has two minor children. According to Plaintiff, on or about April 1, 2019, Defendant Tylita Frierson ("Defendant Frierson"), an investigator for DCS, called Plaintiff after receiving a child abuse referral. At the time of the phone call, Defendant Frierson was conducting an interview with Plaintiff's eleven-year-old son. According to Plaintiff, Defendant Frierson asked Plaintiff to come to her son's school with her fifteen-year-old daughter – who had not been enrolled in school – to conduct an interview with her. Plaintiff states that upon her arrival, Defendant Frierson asked Plaintiff to go to the DCS local office because Defendant Frierson's supervisor would "likely bring [the children into DCS] custody."

Plaintiff and her daughter drove to the local office where Defendant Frierson read the allegations to Plaintiff. Plaintiff alleges that the allegations are untrue and that it was her who called in the child abuse as a result of an older brother's inappropriate conduct towards the son months earlier. Upon being asked to take a drug test, Plaintiff refused. After her refusal,

---

[1] The instant case has been referred to the United States Magistrate Judge by Administrative Order pursuant to the Federal Magistrate Act, 28 U.S.C. §§ 631-639. All pretrial matters within the Magistrate Judge's jurisdiction are referred pursuant to 28 U.S.C. § 636(b)(1)(A) for determination, and all other pretrial matters are referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) for report and recommendation.

Defendant Jane Cane ("Defendant Cane"), a supervisor with DCS, and Defendant Frierson informed Plaintiff that both children would be taken into DCS custody. Plaintiff states that the children were placed with Plaintiff's mother-in-law, the children's grandmother, pursuant to an voluntary Immediate Protection Agreement. Plaintiff alleges that "although there was no allegation of abuse," Plaintiff was only allowed supervised visitation with her children.

According to Plaintiff, Defendant Frierson submitted a report to the presiding judge "that had no factual information." Plaintiff alleges that Defendant Frierson failed to investigate the living situation and never came to the home. Plaintiff accuses Defendant Frierson of committing perjury. Plaintiff complains that she has been prevented from seeing her children, which has caused her "undue emotion[al] distress." Plaintiff states that since these events, her son has recanted what he told Defendant Frierson and is currently having "sever[e] behavioral problems" that he did not have while living with her.

Plaintiff states that Defendant Shaquita Holt ("Defendant Holt"), a family social worker for DCS, "failed to ensure that services" were provided to the children. According to Plaintiff, she is being "held responsible for her children's needs not being met, despite being denied her right to be involved as parent by DCS and Holt." Plaintiff states that there have been no efforts from the DCS or Defendant Holt to "reunify" her and her children. Plaintiff also complains that she asked DCS to assist her but DCS refused.

Plaintiff also attached ten exhibits to her complaint. These exhibits include: (1) an email from Plaintiff to Kelly Pearson, Plaintiff's public defender, dated December 10, 2019; (2) a letter from the program manager at DCS to Plaintiff dated November 25, 2019, telling Plaintiff that her request for a letter regarding her DCS involvement was received; (3) an email from Karen Daugherty, the Grand East Region Records Coordinator to Plaintiff dated November 5, 2019,

3

explaining to Plaintiff that she was listed as the perpetrator and therefore did not have rights to the records; (4) an email chain between Plaintiff, Kelly Pearson, Defendant Holt, and Plaintiff's mother-in-law dated October 30 and October 31, 2019; (5) an email from Plaintiff to Kelly Pearson dated August 22, 2019; (6) an email from Sonja Johnson, a DCS worker, to Plaintiff regarding Plaintiff's request for a bed, dishes, pots, pans, and rental assistance and how Plaintiff may receive assistance; (7) an email chain between Plaintiff and several other individuals dated May 27 through June 4, 2018; (8) a Child Abuse Tracking page; (9) a page titled "You Can Expect the Following to Occur During Your Child's Placement;" and (10) a Family Permanency Plan which recounts how and why DCS became involved and what Plaintiff's son originally told Defendant Frierson. In total, Plaintiff alleges violations of her civil rights under Section 1983, and "for abuse of process, negligence, malicious prosecution, perjury, conspiracy, official misconduct and intentional infliction of emotional distress."

As relief, Plaintiff seeks an undefined amount of compensatory and punitive damages; appropriate equitable relief against all Defendants; "an award of treble damages and pecuniary damages suffered as a result of the Defendants criminal actions pursuant to [Tenn. Code Ann.] § 29-39-104;" and any other such relief as the Court deems just and proper.

## II.     Analysis

Pursuant to Section 1915, in proceedings *in forma pauperis*, notwithstanding any filing fee, or any portion thereof that may have been paid, the Court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue or that the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).

Pleadings and documents filed by *pro se* litigants are to be "liberally construed," and a "*pro se* complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 93, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6thCir. 1991)). The basic pleading essentials are not abrogated in *pro se* cases. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). A *pro se* complaint must still "contain sufficient factual matters, accepted as true to state a claim to relief that is plausible on its face." *Barnett v. Luttrell*, 414 F. App'x 784, 786 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and emphasis omitted)). District Courts "have no obligation to act as counsel or paralegal" to *pro se* litigants. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). District Courts are also not "required to create a *pro se* litigant's claim for him." *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003).

### A. *Section 1983 Claims against DCS and Other Defendants in Their Official Capacities*

Plaintiff alleges that her constitutional right to parent her children has been violated and therefore brings a Section 1983 action against the DCS as well as against Defendant Cane, Defendant Frierson, Defendant Holt, and Defendant Cynthia Rogers ("Defendant Rogers") in their official capacities as employees of the DCS. This Court, however, lacks subject matter jurisdiction over Plaintiff's Section 1983 claims against the DCS and the other Defendants in their official capacities.

The Eleventh Amendment provides that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.

Const. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens," the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

Official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citations and quotations omitted). As such, claims brought against government officials in their official capacities are essentially a suit against the government entity itself. *Graham*, 473 U.S. at 166 (citation omitted). Accordingly, the official capacity claims against the individual Defendants in their official capacities as employees of the DCS are essentially suits against the DCS itself. The DCS is an agency of the State of Tennessee, and as such "[a] suit against [the DCS] is actually a suit against the State of Tennessee." *Ward v. Shelby Cty.*, 2006 WL 8435001, at *3 (W.D. Tenn. Mar. 7, 2006) (citing *Pennhurst State Schl. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)); *see also Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003) (finding that the "Tennessee Department of Children's Services . . . [is] 'the State'"). As a result, the claims against the DCS and against the individual Defendants in their official capacities are more properly construed as a suit against the State of Tennessee.

"Absent a clear abrogation of immunity by congressional action or an express state waiver of that immunity, the Eleventh Amendment prohibits suits for damages against a state in federal court."[2] *Hixon v. Tennessee*, 2015 WL 1486362, at *2 (W.D. Tenn. Mar. 31, 2015); *see also*

---

[2] *Ex parte Young* provides an additional exception to the Eleventh Amendment bar; however, it is not applicable here. Under the *Ex parte Young* doctrine, a federal court may issue prospective injunctive relief against a state official sued in his or her official capacity. 209 U.S. 123 (1908); *see also Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (explaining that the Eleventh Amendment does not bar suits against state officials in their official capacity for injunctive relief). Plaintiff seeks other "equitable relief," but fails to specify what equitable relief she is seeking. Because

*Graham*, 473 U.S. at 165-66. Here, Plaintiff seeks various forms of monetary damages. When Congress enacted Section 1983, it did not abrogate the Eleventh Amendment. *See Edelman*, 415 U.S. at 675-77. Nor has Tennessee waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Accordingly, any claims against the DCS and its employees in their official capacities – construed as claims against the State of Tennessee – for monetary damages are barred by the Eleventh Amendment and as such, this Court lacks subject matter jurisdiction over those claims. It is therefore RECOMMENDED that Plaintiff's claims against the DCS and the individual Defendants in their official capacities be dismissed for failure to state a claim upon which relief may be granted.

### B. Section 1983 Individual Capacity Claims Against Defendants Frierson and Holt

Plaintiff also sued Defendants Frierson and Holt in their individual capacities. Generally, to successfully plead a Section 1983 claim, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) deprivation was caused by a person acting under color of state law. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). Here, Plaintiff has not sufficiently alleged deprivation of her constitutional or federally protected rights.

In regard to Defendant Holt, Plaintiff states "Holt . . . failed to ensure that services are provided to the children" and Holt has "denied [Plaintiff] her right to be involved as a parent." These nonspecific statements, without further factual allegations, are insufficient to state a claim. Plaintiff's conclusory assertions, alone, are not enough to allow this Court to infer the essential elements of Plaintiff's Section 1983 claim against Defendant Holt in her individual capacity. *See Barnett*, 414 F. App'x at 786. Accordingly, it is RECOMMENDED that Plaintiff's Section 1983

---

Plaintiff fails to state whether or not she is seeking injunctive relief, the *Ex parte Young* doctrine does not apply to provide Plaintiff with relief against the state employees in their official capacities.

claims against Defendant Holt in her individual capacity be dismissed for failure to state a claim. As such, the following discussion pertains only to Defendant Frierson in her individual capacity.

"[U]nder the [Fourteenth Amendment], the parent-child relation gives rise to a liberty interest that a parent may not be deprived of absent due process of law." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). "[T]he Supreme Court has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent-child relation." *Id.* This right, however, is "neither absolute nor unqualified." *Id.* at 690. Plaintiff vaguely asserts that Defendant Frierson has interfered with her right to the care, custody, companionship, and management of her children. From what can be gathered from Plaintiff's Complaint, it appears that Plaintiff is arguing that there was no compelling interest to remove the children, that the Defendant Frierson "intentionally and maliciously fabricated evidence of abuse," and that Defendant Frierson violated her due process rights by committing perjury during her hearing.

As to Defendant Frierson's investigation of the alleged abuse, the Sixth Circuit has recognized that a state is permitted to investigate allegations of child abuse without infringing on a parent's constitutional right so long as the investigations are not conducted with malicious motive, bad faith, or employs tactics which "shock the conscience." *Id.* at 691 n.1.; see also *Teets v. Cuyahoga Cty., Ohio*, 460 F. App'x 498, 502 (6th Cir. 2012). Plaintiff's statements that Defendant Frierson acted "intentionally or maliciously" and that the tactics "shocked the conscious" are legal conclusions not entitled to an assumption of truth. *See Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3. ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.")

8

Additionally, as to Plaintiff's assertion that there was no compelling interest in removing the children from Plaintiff's custody, "although [the plaintiff] has a fundamental right to raise her [children], the State has a concomitant interest in the welfare and health of children in its jurisdiction, and in certain narrowly defined circumstances, the State's interest in a child's well-being may supersede that of a parent." *Bartrell v. Lohiser*, 215 F.3d 550, 558 (6th Cir. 2000). Although Plaintiff repeatedly asserts that there was "no allegation of abuse of the children," Plaintiff's own attachments to her Complaint demonstrate that not only had her son spoken to Defendant Frierson about alleged abuse and neglect, Plaintiff herself was named the perpetrator. Accordingly, the State, and Defendant Frierson, had a compelling interest in removing the children from Plaintiff's custody at that time.

Furthermore, Plaintiff's Complaint does not state a claim for any procedural due process violation. As a result of a parent's liberty interest in the custody of his or her child, "state intervention in the relationship between a parent and child must be accomplished by procedure meeting the requisites of the Due Process Clause." *Edison v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). As such, parents are generally entitled to a hearing "within a reasonable time." *Id.* at 635. In *Smith v. Williams-Ash*, the Sixth Circuit recognized a limited exception to the traditional due process requirements in the context of child-removal, explaining that a hearing is not required when parents voluntarily consent to the terms of a plan. 520 F.3d 596, 600 (6th Cir. 2008); *see also Teets*, 460 F. App'x at 503. In the instant case, Plaintiff states that she signed an "IPA." An IPA, or Immediate Protection Agreement, is a voluntary agreement signed by the parent as "an option to ensure the safety of the child[ren] when the parent/legal custodian lack sufficient protective capacity to assure the child is safe from abuse or neglect." *See Administrative Policies and Procedures: 14.9*, State of Tennessee Dep't of Children's Servs. 1;

9

https://files.dcs.tn.gov/policies/chap14/14.9.pdf. Additionally, it is clear from Plaintiff's Complaint that she was given a hearing on the removal of her children as she alleges that Defendant Frierson subsequently committed perjury. As to Plaintiff's claim of perjury, Plaintiff merely states that Defendant Frierson lied on the stand. Again, without more, Plaintiff fails to sufficiently state a claim.

Plaintiff's Complaint does not sufficiently establish that Defendant Frierson violated Plaintiff's constitutionally or federal protected rights. Accordingly, it is RECOMMENDED that all of Plaintiff's Section 1983 claims against Defendant Frierson in her individual capacity be dismissed for failure to state a claim.

### C. *State Law Claims Against DCS and Other Defendants in Their Official Capacities*

Plaintiff also asserts "Tennessee state law claims . . . for abuse of process, negligence, malicious prosecution, perjury, conspiracy, official misconduct and intentional infliction of emotional distress." As discussed above, Plaintiff's claims against the DCS and against each of the four individual Defendants in their official capacities are more properly construed as claims against the State of Tennessee. The Supreme Court in *Pennhurst State School & Hosptial v. Halderman* explained that even where a court may exercise supplemental jurisdiction over state law claims, the court must still "examine each claim in a case to see if the court's jurisdiction over the claim is barred by the Eleventh Amendment." 465 U.S. at 121 (holding that the Eleventh Amendment immunity applies to state law claims brought by a private individual against the State). Accordingly, the for same reasons discussed above, it is RECOMMNEDED that the Court lacks subject matter jurisdiction and that Plaintiff's state law claims against the DCS and individual Defendants in their official capacities be dismissed for failure to state a claim upon which relief may be granted.

### D. State Law Claims Against Defendants Frierson and Holt in Their Individual Capacities

Finally, this Court RECOMMENDS that Plaintiff's state law claims against Defendant Holt and Defendant Frierson in their individual capacities also be dismissed for failure to state a claim. Plaintiff alleges many purported state law claims.

Plaintiff first alleges abuse of process. In Tennessee, the essential elements of an abuse of process claim include: "(1) the existence of an ulterior motive, and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Snyder v. Icard*, 986 S.W.2d 550, 555 (Tenn. 1999). The essence of the claim is that a defendant uses the process "outside of its lawful course to the accomplishment of some object other than that for which it is provided." *Priest v. Union Agency*, 125 S.W.2d 142, 143 (1939). Plaintiff vaguely alleges that the Defendants have a "personal vendetta" against her but provides no actual ulterior motive for their allegedly improper behavior. Additionally, Plaintiff fails to explain what act Defendant Holt and Defendant Frierson engaged in which was outside of the regular proceedings.

Next, Plaintiff alleges negligence. Under Tennessee law, a negligence claim requires the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. *Turner v. Jordan*, 957 S.W.2d 815 (Tenn. 1997) (citation omitted). Plaintiff states that Defendant Holt and Defendant Frierson owed her and her children a "duty of care to protect the children from harm and to make reasonable efforts to maintain or reunite the family." According to Plaintiff, Defendants Holt and Frierson breached this duty by removing her children from her care and by failing to ensure that the children receive therapy. However, as stated above, at the time of the removal – which Plaintiff voluntarily

11

agreed to via the IPA – the State had a compelling reason. The son had just informed Defendant Frierson of alleged abuse, or at the very least, of neglect. Accordingly, the Defendants were acting to ensure the safety and care of her children. Furthermore, the children were placed with other family – the children's grandmother and Plaintiff's mother-in-law. Plaintiff's attachments also conflict with her allegations. Despite Plaintiff's allegations that the children did not receive therapy, Plaintiff attached an email which expressly states that the children were receiving therapy. Accordingly, none of the allegations within the Complaint allow this Court to infer that the Defendants breached any duty owed to Plaintiff. It must also be noted that to the extent that Plaintiff, proceeding *pro se*, is attempting to assert a negligence claim on behalf of her children, she may not do so. *See Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2003) ("[P]arents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative.").

Plaintiff also alleges malicious prosecution. The essential elements of a claim for malicious prosecution include that "(1) a prior suit or judicial proceeding was instituted without probable cause, (2) defendant brought such prior action with malice, and (3) the prior action was finally terminated in plaintiff's favor." *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246, 248 (Tenn. 1992). Here, Plaintiff provides no information regarding any prior suit or judicial proceeding, no factual allegations supporting the notion that the Defendants acted with malice, or that any prior action as terminated in her favor.

Next, Plaintiff alleges conspiracy. It is somewhat unclear what Plaintiff's conspiracy claim includes. For purposes of this Report and Recommendation, the Court assumes that the Plaintiff intends to bring a civil conspiracy claim under Tennessee law. The elements of civil conspiracy include a (1) common design between two or more individuals, (2) to accomplish through

12

concerted action an unlawful purpose, (3) with an overt act in furtherance of the conspiracy, and (4) and which results in injury. *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (citations omitted). Civil conspiracy also "requires an underlying predicate tort allegedly committed." *PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 556 (Tenn. Ct. App. 2012) (quotation omitted). Here, although each of the Defendants work for DCS, Plaintiff makes no factual allegations which show a common design between them beyond her conclusory allegations. Additionally, Plaintiff does not sufficiently allege an unlawful purpose and as stated throughout this Report and Recommendation, Plaintiff fails to sufficiently state a claim for any underlying predicate tort.

Plaintiff also purports to bring a claim for intentional infliction of emotional distress. The elements of an intentional infliction of emotional distress claim include that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff. *Odom v. Claiborne Cty., Tenn.*, 498 S.W.3d 882, 886 (Tenn. Ct. App. 2016). Conduct is not outrageous simply because it results in indignities. *See Clark v. Hoops, LP*, 2008 WL 1132001 (W.D. Tenn. July 1, 2008). Plaintiff makes conclusory allegations that Defendants' conduct was intentional or reckless, constituted extreme and outrageous conduct, and that she has suffered "degradation of her familial relationship . . . humiliation, embarrassment, and mental and emotional anguish." Merely reciting the elements of a claim, however, is insufficient. As stated above, Plaintiff makes almost no factual allegations against Defendant Holt. Additionally, the conduct complained of, while allegedly intentionally, does not rise to the level of extreme and outrageous. Finally, while Plaintiff may be embarrassed or humiliated, her conclusory allegations that she has suffered emotional anguish are not enough without more.

Finally, Plaintiff states that she is bringing state law claims for perjury and official misconduct. It is unclear what Plaintiff means and she makes almost no factual allegations regarding these claims except that Defendant Frierson committed perjury. As to Plaintiff's perjury claim, courts generally agree that there is no civil claim for perjury. *See Chaves v. Eacott*, 2014 WL 619716, at *3 (E.D. Tenn. Feb. 18, 2014) (listing cases which hold that there is no civil claim for perjury). To the extent that Plaintiff may be attempting to bring her perjury claim pursuant to a criminal statute, Tenn. Code Ann. §§ 39-1-702 to -703, those do not provide a basis for a civil claim. *See Thomas v. Fayette Cty.*, 2016 WL 11249102, at *12 (W.D. Tenn. Dec. 19, 2016). As to Plaintiff's official misconduct claim, to the extent that Plaintiff was attempting to bring a claim for official misconduct under § 39-16-402 of the Tennessee Code Annotated, that provision is for criminal penalties and does not provide a basis for a civil action. *See generally, Faulkner v. Mattina*, 2014 WL 201463, at *8 (E.D. Tenn. Jan. 17, 2014). Accordingly, it is RECOMMENDED that Plaintiff's state law claims be dismissed for failure to state a claim upon which relief may be granted.

### III. Conclusion

For the reasons set forth herein, it is RECOMMENDED that Plaintiff's Complaint be DISMISSED pursuant to Section 1915 for failure to state a claim upon which relief may be granted.

The Court must also consider whether Plaintiff should be allowed to appeal this decision *in forma pauperis*, should she seek to do so. The United States Court of Appeals for the Sixth Circuit requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed *in forma pauperis*, whether the appeal would be frivolous. Twenty-eight U.S.C.

§ 1915(a)(3) provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to recommend dismissal of this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. It is therefore RECOMMENDED that the Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal *in forma pauperis*.

SIGNED this 30th day of July 2020.

                                              s/ Charmiane G. Claxton
                                              CHARMIANE G. CLAXTON
                                              UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**